**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jessie JONES, Jr., Defendant–Appellant.**

No. 94–5913.

United States Court of Appeals, Sixth Circuit.

Reargued June 12, 1996.

Decided March 12, 1997.

---

Before: MARTIN, C.J., and MERRITT, KENNEDY, JONES, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, BATCHELDER, DAUGHTREY, MOORE, and COLE, Circuit Judges, sitting en banc.

BATCHELDER, J., delivered the opinion of the court, in which MERRITT, KENNEDY, NELSON, BOGGS, NORRIS, SUHRHEINRICH, and SILER, JJ., joined. RYAN, J. (pp. 673–77), delivered a separate concurring opinion, in which MARTIN, C.J., JONES, DAUGHTREY, MOORE, and COLE, JJ., joined.

BATCHELDER, Circuit Judge.

Jessie Jones, Jr., appeals his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (Supp.1996). A panel of this court vacated the conviction and remanded this case for a new trial. *United States v. Jones,* 65 F.3d 520, 524 (6th Cir.1995). We granted the government's petition for a rehearing *en banc, United States v. Jones,* 73 F.3d 616 (6th Cir.1995), and, for the reasons enumerated below, we **AFFIRM** Jones's conviction.

## I. FACTS AND PROCEDURAL HISTORY

A federal grand jury indicted Jones for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Supp. 1996). His case proceeded to a jury trial, where he pleaded not guilty. At the commencement of trial, Jones stipulated with the government that he was "a prior convicted felon for the purposes of this trial."

The district court, prior to opening statements, informed the jury that

the defendant and the government have agreed or stipulated that the defendant is—or was, in fact, a convicted felon at the date alleged in the indictment. The defendant agrees that he was convicted of a felony prior to the date alleged in the indictment, so that element of the case has been proven. So you will consider that— by agreement, that the government has proven that aspect of the case.

During the course of the trial, Jones testified that he had previously been convicted of seven felonies, and denied that he was contesting his convicted-felon status. He emphasized that his theory of the case was that he never possessed a weapon.

At the conclusion of the evidence, the district court gave the following instruction, which is the focus of this appeal:

The first element you must find beyond a reasonable doubt before you can convict the defendant is that the defendant had been convicted of a felony in a court of the United States or any state prior to the date he is charged with possessing a firearm. To satisfy the first element, you need only find that defendant was, in fact, convicted of a felony and the conviction was prior to the receipt or possession of the firearm charged in this case. Defendant admits that he was convicted of a felony prior to the date alleged in the indictment, so this element of the offense has been proven. Since defendant admits that he was previously convicted of a felony, *you will find that the government has established this element of the offense,* and you will proceed to determine if the gov-

ernment has proven the remaining elements of the offense.

(emphasis added). Jones did not object to this instruction at trial. The case was submitted to the jury, which returned a guilty verdict. Jones subsequently filed this timely appeal.

## II. ANALYSIS

■ "This circuit has set a high standard for reversal of a conviction on the grounds of improper instructions." *United States v. Sheffey,* 57 F.3d 1419, 1429 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 749, 133 L.Ed.2d 697 (1996). Because Jones raised no objection to the instruction at trial, our review is limited to one for plain error. *See* Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); *United States v. Sherrod,* 33 F.3d 723, 724 (6th Cir.1994).

■ In *United States v. Thomas,* 11 F.3d 620 (6th Cir.1993), a panel of this court had occasion to consider thoroughly the Supreme Court's explication of the elements of a Rule 52(b) analysis. *See United States v. Olano,* 507 U.S. 725, 731–36, 113 S.Ct. 1770, 1776–79, 123 L.Ed.2d 508 (1993). We concluded that our inquiry under Rule 52(b) consists of the following four distinct, though interrelated, analyses: (1) whether an error occurred in the district court; (2) if error occurred, whether the error was plain; (3) if the error was plain, whether the plain error affected substantial rights; and (4) "even if all three factors exist, we must then consider whether to exercise our discretionary power under Rule 52(b), or in other words, we must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings." *Thomas,* 11 F.3d at 630. Additionally, our evaluation of claimed error must be done "in light of the entire trial record." *United States v. Wilkinson,* 26 F.3d 623, 625 (6th Cir.1994) (citing *United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985)).

### A. OCCURRENCE OF ERROR

■ Jones claims that the instruction to the jury that "you will find that the government has established this element of the offense" was a deviation from the legal rule preventing a directed verdict for the prosecution. As a general rule, a verdict cannot be directed in favor of the prosecution no matter how strong the evidence against the defendant. *See United States v. Martin Linen Supply Co.,* 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355–56, 51 L.Ed.2d 642 (1977); *United States v. Prujansky,* 415 F.2d 1045, 1048 (6th Cir.1969). At least three theories, however, have recently been advanced to explain why, in a case such as this, the district court's instruction is not error at all. These theories include: (1) waiver, *see United States v. Mason,* 85 F.3d 471, 472–73 (10th Cir.1996) (holding that since guilty pleas and wholesale waivers of the right to a jury trial do not run afoul of the Sixth Amendment, a defendant can waive constitutional rights on single elements through stipulations; such action does not result in a directed verdict because "the judge has not removed the consideration of an issue from the jury; the parties have"); *see also United States v. Jones,* 65 F.3d 520, 526 (6th Cir.) (Matia, J., dissenting), *vacated and reh'g en banc granted,* 73 F.3d 616 (6th Cir.1995). *But see United States v. Muse,* 83 F.3d 672, 679 (4th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 261, 136 L.Ed.2d 186 (1996) ("[O]nce a defendant pleads not guilty to a crime and elects to proceed before a jury, the district court must instruct, and the jury must consider, whether the government has proved beyond a reasonable doubt all the elements involved in the crime charged— even if the defendant and the government have entered a stipulation as to certain of those elements."); (2) a stipulation-exception to the general rule against directed verdicts in criminal cases, *see Jones,* 65 F.3d at 525 (Matia, J., dissenting) (relying on *Prujansky,* 415 F.2d at 1048 (acknowledging that proof must be presented and the jury instructed "on all elements of the alleged crime *unless the parties otherwise stipulate* ") (emphasis added)). *But see Muse,* 83 F.3d at 680 ("The government is entitled to have the court inform the jury of the powerful effect of a stipulation but a court cannot direct a verdict, even a partial verdict, against the defendant."); and, finally, (3) the government's theory that there is no invasion into the province of the jury because when a defendant affirmatively stipulates to the "ultimate" or "elemental" fact, there is no longer any factual dispute over the existence of that element for the jury to resolve, and therefore, an instruction to the jury to find that the stipulation established the fact is not a directed verdict. *See United States v. Gaudin,* —— U.S. ——, ——, 115 S.Ct. 2310, 2316, 132 L.Ed.2d 444 (1995) (holding that a jury's function in a criminal case is " 'to determine the existence of an element of the crime—that is, an 'ultimate' or 'elemental' fact—from the existence of one or more 'evidentiary' or 'basic' facts' ") (quoting *County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979)); *United States v. Benally,* 756 F.2d 773, 778 (10th Cir.1985) (holding that an instruction to find an "elemental" fact constitutes a directed verdict when stipulation was only to "evidentiary" fact).

We decline to decide at this time whether the instruction challenged here was error. Rather we choose to decide the case on narrower grounds, *see Ashwander v. TVA,* 297 U.S. 288, 341, 56 S.Ct. 466, 480, 80 L.Ed. 688 (1936) (Brandeis, J., concurring), and will assume error for purposes of completing the Rule 52(b) analysis.

### B. OCCURRENCE OF PLAIN ERROR

■ Assuming the existence of error for purposes of our analysis, we must next determine whether the error was plain. *United States v. Thomas,* 11 F.3d 620, 630 (6th Cir.1993) (citing *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993)). The term plain "is synonymous with 'clear' or, equivalently, 'obvious.' " *Olano,* 507 U.S. at 734, 113 S.Ct. at 1777 (citation omitted).

There is only sparse case law addressing this question, and what little case law exists is divergent and conflicting. *United States v. Mason,* 85 F.3d 471, 473–74 (10th Cir.1996); *United States v. Muse,* 83 F.3d 672, 677–81 (4th Cir.), *cert. denied,* —— U.S. ——, 117

S.Ct. 261, 136 L.Ed.2d 186 (1996). As the *Muse* court noted, "[w]e have been unable to find much guidance in the case law; indeed, no appellate case seems to have set forth proper language for a jury instruction in the situation at hand." *Muse*, 83 F.3d at 680. Against such a legal patchwork, we think that any error in the trial court's instruction is far from "clear" or "obvious." *Olano*, 507 U.S. at 734, 113 S.Ct. at 1777 ("At a minimum, a court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law."). We therefore conclude that any such error was not plain error. Absent plain error, *Olano* and Rule 52(b) prevent us from correcting any error which Jones, by failing to make a timely objection in the district court, forfeited[1] his right to challenge. *See Thomas*, 11 F.3d at 630 (citing *Olano*, 507 U.S. at 734, 113 S.Ct. at 1777-78).

### C. EFFECT ON SUBSTANTIAL RIGHTS

■ Even if we were to assume plain error, Jones cannot prevail. The third prong of our analysis requires us to determine whether the plain error affected Jones's substantial rights. *Id.* "[I]n most cases ['affect substantial rights'] means that the error must have been prejudicial: It must have affected the outcome of the District Court proceedings." *Olano*, 507 U.S. at 734, 113 S.Ct. at 1778. The burden of persuasion is on Jones, rather than the government, to make a specific showing of prejudice. *Id.* at 734-35, 113 S.Ct. at 1777-78 (recognizing, however, that there may perhaps be cases where the defendant is not required to make a specific showing of prejudice).[2]

Jones wholly fails to make a specific showing of prejudice. Indeed it would be nearly impossible to establish that the "erroneous" instruction affected the outcome of the trial when Jones stipulated to his convicted-felon status, testified about his convictions on the stand, and clearly proceeded at trial on the theory that he was a convicted felon but that he never possessed a firearm. We hold that any error in this case, plain or otherwise, did not affect Jones's substantial rights by affecting the outcome of the trial. *See* FED. R.CRIM.P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."); *Olano*, 507 U.S. at 734, 113 S.Ct. at 1777-78.[3]

### D. SERIOUS EFFECT ON THE FAIRNESS, INTEGRITY OR PUBLIC REPUTATION OF JUDICIAL PROCEEDINGS

"Finally, even if all three [of the above] factors exist, we must then consider whether to exercise our discretionary power under Rule 52(b)...." *Thomas*, 11 F.3d at 630. The Supreme Court has previously "explained that the discretion conferred by Rule 52(b) should be employed 'in those circumstances in which a miscarriage of justice would otherwise result.'" *Olano*, 507 U.S. at 736, 113 S.Ct. at 1778-79 (quoting *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (citation omitted)). The Court stated that while in "collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent," the exercise of remedial discretion under Rule 52(b) is not so strictly limited. *Id.*

■ Although courts of appeal should correct errors in cases of actual innocence, we

---

1. "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *Olano*, 507 U.S. at 733, 113 S.Ct. at 1777 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

2. Jones has not provided us any basis on which to conclude that his is the rare circumstance in which, although he cannot show prejudice, his substantial rights have been otherwise affected.

3. Indeed, the rule that the panel's original disposition of this case would have established could

easily result in greater prejudice to defendants. As the Tenth Circuit observed, there is a danger that the original *Jones* decision would deprive "defendants ... of the strategic benefit of a sterile stipulation in lieu of stark evidence of both the number and character of prior felony convictions.... This result would [be] far more prejudicial to [defendants] than [an] antiseptic stipulation." *United States v. Mason*, 85 F.3d 471, 473 (10th Cir.1996) (citing *United States v. Jones*, 65 F.3d 520, 526 (6th Cir.) (Matia, J., dissenting), *vacated and reh'g en banc granted*, 73 F.3d 616 (6th Cir.1995)).

are not constrained to correct errors only in such cases. *Id.* "Rather, the standard that should guide the exercise of remedial discretion under Rule 52(b)" is whether "the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)).

■ Even if we were to assume that Jones has shown that the error was plain and that it affected his substantial rights, we would stay our hand in the exercise of our discretionary power in this case. It is abundantly clear that any error in Jones's case does not create a circumstance in which a miscarriage of justice would otherwise result. There is absolutely no possibility that Jones is actually innocent of § 922(g)(1)'s convicted-felon element. Neither is there a chance that any alleged error in this case seriously affected the fairness, integrity or public reputation of judicial proceedings. Absent the requisite effect, we refrain from exercising our discretionary authority.

### III. CONCLUSION

After careful review of the existing case law and the facts of this case, we find no reversible error. In summary, if there was any error in the district court's instruction, it was not plain error; if there was plain error, it did not affect Jones's substantial rights; if there was plain error affecting Jones's substantial rights, it did not seriously affect the fairness, integrity or public reputation of the judicial proceedings in Jones's case. Because Jones's assignment of error fails at nearly every level of analysis, we **AFFIRM** his conviction.

RYAN, Circuit Judge, concurring separately.

While we, a minority of our court's active judges, agree that the judgment of conviction in this case should be affirmed, we do not agree with the reasoning in the majority opinion. In our view, it was plain error, indeed constitutional plain error, for the trial judge to instruct the jurors that "you will find that the government has established [one of the] element[s] of the offense"

charged. But, like our colleagues, we would not reverse the defendant's conviction because we do not believe that the trial court's instructional error resulted in a miscarriage of justice.

### I.

Jessie Jones, Jr., was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). At his jury trial he stipulated with the government that he was a convicted felon. In addition, Jones testified that he had previously been convicted of several felonies, but he maintained that he had never possessed a firearm.

At the conclusion of the evidence, the district court gave the following instruction, which is the basis of this appeal:

> The first element you must find beyond a reasonable doubt before you can convict the defendant is that the defendant had been convicted of a felony in a court of the United States or any state prior to the date he is charged with possessing a firearm. To satisfy the first element, you need only find that defendant was, in fact, convicted of a felony and that the conviction was prior to the receipt or possession of the firearm charged in this case. Defendant admits that he was convicted of a felony prior to the date alleged in the indictment, so this element of the offense has been proven. Since defendant admits that he was previously convicted of a felony, *you will find* that the government has established this element of the offense, and you will proceed to determine if the government has proven the remaining elements of the offense.

(Emphasis added.) Jones did not object to this instruction at trial. The case was submitted to the jury and Jones was convicted. He filed a timely appeal arguing that the instruction given on the element of prior conviction was plain error.

### II.

A criminal defendant has a constitutionally guaranteed right to have a jury determine whether his guilt of every element of the crime with which he is charged has been

proved beyond a reasonable doubt. *United States v. Gaudin,* — U.S. —, —, 115 S.Ct. 2310, 2320, 132 L.Ed.2d 444 (1995); *United States v. Mentz,* 840 F.2d 315, 319 (6th Cir.1988). This rule results from the "self-evident" cooperation of the Fifth Amendment right to due process and the Sixth Amendment right to a jury trial. *Sullivan v. Louisiana,* 508 U.S. 275, 278, 113 S.Ct. 2078, 2080–81, 124 L.Ed.2d 182 (1993); *see Gaudin,* — U.S. at —, 115 S.Ct. at 2313. The Sixth Amendment guarantees "the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.'" *Sullivan,* 508 U.S. at 277, 113 S.Ct. at 2080. It follows from this that a trial judge "may not direct a verdict for the State, no matter how overwhelming the evidence." *Id.* The Due Process Clause of the Fifth Amendment contributes the requirement that the government prove, beyond a reasonable doubt, the facts necessary to establish *all* of the elements of a charged offense. *Id.* at 277–78, 113 S.Ct. at 2080–81.

The lead opinion in the panel decision in this case, in holding that the trial court committed plain error in telling the jurors that the stipulated fact had been "proven," relied heavily on this court's decision in *Mentz.* In that case, the government submitted *uncontested* evidence in support of an element of the charged crime and the trial judge instructed the jury that that element had been "proved." *Mentz,* 840 F.2d at 318–19. This court concluded that, in so instructing the jury,

> [t]he judge improperly cast himself in the role of trier of fact, and directed a verdict on an essential element of the bank robbery charge. His instructions had the effect of relieving the government of its burden of proving, beyond the *jury's* reasonable doubt, that the accused committed the crimes charged.

*Id.* at 320 (footnote omitted). The *Mentz* court also determined that the erroneous instruction could not be considered harmless because it was the kind of constitutional error that is "so fundamental to the criminal process that reversal is required 'without regard to the evidence in the particular case.'" *Id.* at 323 (quoting *Rose v. Clark,*

478 U.S. 570, 577, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986)). This court explained that "'when an instruction prevents the jury from considering a material issue, it is equivalent to a directed verdict on that issue and therefore cannot be considered harmless.'" *Id.* at 324 (quoting *Hoover v. Garfield Heights Mun. Court,* 802 F.2d 168, 177 (6th Cir.1986)).

Although there is much in the reasoning of *Mentz* that supports reversal of the defendant's conviction here, we think there are important differences between *Mentz* and this case, and that there is an even more compelling reason in this case for disapproving the trial court's erroneous instruction.

In the first place, there is a significant difference between instructing a jury that an *uncontested* fact has been proved, as in *Mentz,* and instructing a jury that a *stipulated* fact has been proved, as in this case. The Supreme Court has plainly stated that "the prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense." *Estelle v. McGuire,* 502 U.S. 62, 69, 112 S.Ct. 475, 481, 116 L.Ed.2d 385 (1991). The situation is much different when a defendant's tactical decision is not merely to leave evidence in support of certain facts uncontested but is, rather, affirmatively to stipulate to certain facts. When a defendant agrees to a fact stipulation, the government is relieved of its burden to *prove* the stipulated fact. *See United States v. Muse,* 83 F.3d 672, 678–79 (4th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 261, 136 L.Ed.2d 186 (1996); *United States v. Branch,* 46 F.3d 440, 442 (5th Cir. 1995). If this were not the case, the strategy and economy afforded by a stipulation would be lost to the defendant, the government, and the courts.

We believe it follows, then, that when a defendant *stipulates* to certain facts, a trial judge may instruct the jury that those facts may be considered *proved* by the government; such an instruction may be given without violating the rule of *Mentz.* Therefore, the portion of the trial court's instruction in this case, that "Defendant admits that he was convicted of a felony prior to the date alleged

in the indictment, so this element of the offense has been *proven*," was entirely proper. (Emphasis added.) Had there been no stipulation that Jones was a convicted felon, but only his testimonial admission that he was, the rule would be otherwise; that is, the government would not be relieved of the burden to prove that the defendant was a convicted felon. The government's proofs, of course, would include the defendant's admission, and indeed could be limited to the admission. Whether a jury would believe that the fact had been proved beyond a reasonable doubt is another matter.

But in this case, the trial judge not only instructed the jurors that the stipulated fact "has been proven," he went further and told them that "[s]ince defendant admits that he was previously convicted of a felony, *you will find* that the government has established this element of the offense." (Emphasis added.) In doing so, the court removed an essential element of the crime charged from the jurors' consideration by directing the jurors what they must "find" as to that element. Declaring that a fact is "proven," thus relieving the government of the burden of offering evidence on the point is one thing, but directing the jurors that they *must* find the fact proved is quite another; it is a finding by the trial court that the stipulation has effectively proved the stipulated fact beyond a reasonable doubt and that the jurors "will" so find. Such a direction violates a defendant's right to have a jury determine his ultimate guilt on every element of the offense with which he is charged. *Muse*, 83 F.3d at 679; *see Gaudin*, —— U.S. at ——, 115 S.Ct. at 2320. We are not alone in this view.

In *Muse*, the Fourth Circuit recognized that a stipulation relieves the government of its obligation to "produce evidence ... to establish the facts stipulated to beyond a reasonable doubt." *Muse*, 83 F.3d at 678. However, it rejected the notion that a stipulation "entitle[s] the prosecution to a directed verdict or exact[s] the ultimate price from a defendant: a 'guilty plea' with respect to an element of the crime." *Id.* at 679. The court explained:

> Although a fact stipulation *may* have the effect of providing proof beyond a reasonable doubt of the existence of the facts that make up an element, a conviction is not valid unless a *jury* considers the stipulation and returns a guilty verdict based on *its* finding that the government proved the elements of the crime beyond a reasonable doubt. A court may not by-pass the jury and enter its own finding that the element has been established.

*Id.* at 679–80 (emphasis added and in original). Relying on the Supreme Court's decisions in *Gaudin* and *Sullivan*, the *Muse* court concluded that "[t]o 'remove from the jury's consideration an element of the crime' would ... violate the 'very foundation of the jury system.'" *Id.* at 679 (quoting *United States v. Gilliam*, 994 F.2d 97, 100 (2d Cir. 1993)).

We recognize that the Tenth Circuit has recently given fact stipulations in a criminal trial a different significance than we would give them. *United States v. Mason*, 85 F.3d 471 (10th Cir.1996). In *Mason*, the court distinguished between evidence and facts, writing that

> [w]hen the only evidence tends to establish an elemental fact, or when the parties stipulate to evidence tending to establish an elemental fact, the jury must still resolve the existence or nonexistence of the fact sought to be proved. In contrast, the jury need not resolve the existence of an element when the parties have stipulated to the facts which establish that element. In the latter circumstance, the judge has not removed the consideration of the issue from the jury; the parties have. More specifically, by stipulating to elemental facts, a defendant waives his right to a jury trial on that element. If such a partial waiver runs afoul of the Sixth Amendment, then traditional, wholesale waivers manifest in bench trials and guilty pleas must necessarily violate the right to a jury trial.

*Id.* at 472–73. We do not agree with the conclusion that "by stipulating to elemental facts, a defendant waives his right to a jury trial on that element." We do not understand a defendant's stipulation to the factual basis of an element to constitute a knowing and voluntary waiver of his constitutional

right to have a jury determine his ultimate guilt on every element of the offense for which he is charged. That is to say, we do not understand Jones's stipulation to be a partial guilty plea. We express no opinion on the question of whether the government and defendant may agree to the removal of an element from the jury's consideration. *See United States v. Prujansky*, 415 F.2d 1045, 1048 (6th Cir.1969). But it is indisputably clear that there was no such agreement in this case. We believe that we would be requiring Jones to give up much more than he wittingly bargained for if we were to find that his stipulation to the fact of a prior conviction constituted a waiver of his rights to a jury trial and to due process.

The court in *Mason,* referring to our panel decision in this case, stated that "[p]erhaps the most disturbing aspect of *Jones* [, 65 F.3d 520,] is its underlying premise: jury nullification." *Mason,* 85 F.3d at 473. We too are disturbed by the discomforting reality of jury nullification. Arguably, when a court devises a rule that preserves and protects the jurors' power to disregard their oath to apply the law as given to them, to the facts as found by them, the court makes a mockery of the jurors' oath and licenses lawlessness in the name of justice. However, even if a jury does not have the lawful *authority* "to bring in a verdict in the teeth of both law and facts," *Horning v. District of Columbia,* 254 U.S. 135, 138, 41 S.Ct. 53, 54, 65 L.Ed. 185 (1920), it unquestionably has the *power* to do so. *See United States v. Wilson,* 629 F.2d 439, 443 (6th Cir.1980). We accept that the "limitation on the extent to which the jury's province can be invaded is based, at least to some extent, on the ... undisputed power[ ] of juries to nullify guilty verdicts." *Muse,* 83 F.3d at 680 (internal quotation marks and citation omitted). But this court has stated that the power a jury has "to reach any verdict it wishes does not ... infringe on the duty of the court to instruct the jury only as to the correct law applicable to the particular case." *United States v. Krzyske,* 836 F.2d 1013, 1021 (6th Cir.1988).

This court has never held that, when instructing a jury as to the correct law, a trial judge may also direct the jury as to what it "will find." The right to a jury trial guaran-

tees "the common-sense judgment of a jury" and "community participation in the determination of guilt or innocence ... as a defense against arbitrary law enforcement." *Duncan v. Louisiana,* 391 U.S. 145, 156, 88 S.Ct. 1444, 1451, 20 L.Ed.2d 491 (1968). Regardless of how disturbed we may be by the possibility that a jury may ignore the law, we may not countenance a trial court's nullification of a defendant's right to either a "common-sense judgment of a jury" or, sadly, a judgment that is devoid of common sense; that is the price in this democracy of "community participation in the determination of guilt or innocence." *Id.* Unlike a jury, *we* may have no other guide but the law.

We conclude that the trial judge in this case crossed the constitutionally significant line between instructing a jury that a stipulated fact may be considered "proven" and instructing a jury as to what it "will find," thus directing a verdict against Jones on an element of the offense.

We conclude, therefore, that the instruction violated the defendant's Fifth Amendment right to due process and Sixth Amendment right to a jury trial.

**III.**

Had Jones objected to the unconstitutional instruction in this case at trial, our next step would be to consider whether the error was harmless beyond a reasonable doubt. *See Mentz,* 840 F.2d at 323. However, Jones did not object to the instruction at trial, and so, we review for plain error. Fed.R.Crim.P. 52(b).

"No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Yakus v. United States,* 321 U.S. 414, 444, 64 S.Ct. 660, 677, 88 L.Ed. 834 (1944). To find plain error, pursuant to Rule 52(b), this court must determine: (1) that an error occurred; (2) that the error was plain; and (3) that the error affected substantial rights. *United States v. Olano,* 507 U.S. 725, 733–35, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993); *see United*

*States v. Thomas,* 11 F.3d 620, 629–30 (6th Cir.1993). But a finding of plain error does not automatically entitle a defendant to reversal of his conviction. The court must then decide whether to exercise its discretion to correct the error. Ordinarily, discretion is exercised to correct an error which causes a "miscarriage of justice" or which "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano,* 507 U.S. at 736, 113 S.Ct. at 1779 (internal quotation marks and citation omitted). But, "plain error affecting substantial rights does not, without more," necessarily, seriously affect the fairness, integrity, or public reputation of judicial proceedings, "for otherwise the discretion afforded by Rule 52(b) would be illusory." *Id.* at 737, 113 S.Ct. at 1779.

Although we are satisfied that the instruction in this case was error and that the error was plain, we are nevertheless convinced that this is not a proper occasion for the exercise of our discretion under Rule 52(b). The instruction was erroneous because it directed the jury to find that Jones was guilty of an element of the crime with which he was charged. However, given that Jones not only stipulated to the fact that he was a convicted felon, but also testified that he was, a decision to vacate his conviction would serve no other purpose than to preserve the jury's power to ignore Jones's admissions and stipulation and nullify the law. Although we acknowledge that this power is an implicit, although logically indefensible, part of the constitutional guarantee to a jury trial—largely because there is no satisfactory way to preclude it—we are not moved to exercise our discretion so that Jones might reap the benefit of a lawless jury verdict.

We have no doubt that many structural errors are capable of causing a "miscarriage of justice" or compromising "the fairness, integrity or public reputation of judicial proceedings." The error in this case, however, was not one of them.

As the Supreme Court explained, "[i]n our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent." *Id.* at 736, 113 S.Ct. at 1779. We have no doubt that Jones is actually guilty of the challenged element

and we believe that the integrity of the judicial system will best be served by declining to upset a verdict which is consistent, as to the element challenged, with the stipulated fact, the defendant's testimony, and the applicable law.

We concur in the judgment of affirmance.